**Daniel SHERIDAN, et al., Plaintiffs,**

v.

**INT'L BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 455, et al., Defendants.**

**Civil Action No. 96–30008–MAP.**

United States District Court,
D. Massachusetts.

Nov. 15, 1996.

Gary A. Ensor, Ryan, Boudreau & Kirkpatrick, South Hadley, MA, for Plaintiffs.

John Connor, Springfield, MA, Marshall T. Moriarty, Moriarty and Connor, Springfield, MA, for Defendants.

ORDER

PONSOR, District Judge.

On October 18, 1996, Magistrate Judge Kenneth Neiman issued a Report and Recommendation recommending that defendants Motion to Dismiss be granted. No objection to the Report and Recommendation having been filed, it is hereby ordered that the Report and Recommendation be adopted and all claims in the above captioned case be dismissed. The Clerk is hereby ordered to enter Judgment for defendants.

It is so ordered.

REPORT AND RECOMMENDATION REGARDING DEFENDANTS' MOTION TO DISMISS AND FOR SANCTIONS (Docket No. 4)

NEIMAN, United States Magistrate Judge.

## I. INTRODUCTION

Plaintiff Daniel Sheridan ("Sheridan"), along with Plaintiffs Kenneth McKenna ("McKenna") and Robert Dudley ("Dudley"), allege both a violation of the Massachusetts eavesdropping statute and invasion of privacy by the International Brotherhood of Electrical Workers, Local 455 (the "union") and two of its officers. Defendants have moved to dismiss both counts of the complaint. They also seek sanctions pursuant to Fed. R.Civ.P. 11. The matter has been referred to this Court for a report and recommendation. 28 U.S.C. § 636(b)(1)(B). For the reasons stated below, the Court recommends that summary judgment be granted in favor of Defendants and that sanctions be disallowed.[1]

## II. BACKGROUND

The following facts are cited in a light most favorable to Plaintiffs. See CMM Cable Rep, Inc. v. Ocean Coast Properties, Inc., 97 F.3d 1504, 1507 (1st Cir.1996). On April 7, 1994, an investigatory meeting was held concerning an employee of Major Wire Company, Incorporated ("Major Wire"). Defendant Steven Pond ("Pond"), a union steward, attended the meeting on behalf of the union. The three plaintiffs represented Major Wire.

During the meeting, Pond—using a miniature tape recorder concealed in his front shirt pocket—recorded the Plaintiffs' speech without their prior knowledge or consent. When the meeting concluded, Pond moved to shut off the machine and was confronted by Sheridan, Major Wire's labor representative. Pond admitted to Sheridan that he had recorded the meeting and that he had secretly taped meetings with officials of Major Wire, including McKenna and Dudley, during the preceding thirty days. Sheridan stated to Pond that it was unlawful to surreptitiously tape-record conversations and repeatedly demanded that Pond deliver the tape. Although Pond protested and threatened to destroy the tape, he eventually turned it over to Sheridan.

On April 8, 1994, Defendant William O'Rourke ("O'Rourke"), the business manager and financial secretary of the union, telephoned Sheridan to inquire about the previous day's incident. O'Rourke admitted that the union knew that stewards were tape-recording meetings with management, but stated that he had been advised by four different lawyers that such practice was permissible. Also on April 8, McKenna suspended Pond without pay for five days for his actions of the previous day. The tape-recording matter was then presented to the Hampden County District Attorney's Office which decided not to pursue any criminal charges against the union.

On April 29, 1994, the union filed a charge against Major Wire with the National Labor Relations Board ("NLRB"). In the charge, the union asserted that Major Wire had, within the past month, "systematically ... harassed, intimidated, coerced and disciplined" union officers, including Pond, "with-

1. Defendants' motion was made pursuant to Fed. R.Civ.P. 12(b)(6) which requires the Court to assess the legal sufficiency of the complaint. Because both parties initially attached a number of exhibits to their respective memoranda of law, the Court decided to treat the motion as a Rule 56 motion for summary judgment and gave the parties until September 27, 1996 to submit any additional material and/or memoranda they deemed pertinent to a Rule 56 motion. See Order (September 11, 1996).

out sufficient reasons" and that the only persons so treated were union officers.[2]

On May 16, 1994, Major Wire itself, through Sheridan, filed an NLRB charge against the union, which it amended on June 13, 1994. In its charge, Major Wire alleged that the union's tape-recording of the meetings was "inherently coercive and intimidative and constitute[d] an unfair labor practice and a conspiracy to violate both state law and the National Labor Relations Act [ ("NLRA") ]." In particular, Major Wire alleged a violation of Section 8(b)(3) of the NLRA.

On June 23, 1994, the NLRB issued a complaint against the union. Specifically, the complaint asserted that by "tape-recording meetings … at which collective-bargaining occurred," the union "has been failing and refusing to bargain collectively and in good faith with an employer in violation of Section 8(b)(3) of the [NLRA]." The NLRB set a hearing on the matter for January of 1995.

On December 19, 1994, the union filed a motion to dismiss the NLRB complaint. The motion to dismiss was denied on March 29, 1995, since, in the eyes of the NLRB, it "raise[d] issues which would best be resolved after a hearing before an administrative law judge." On October 16, 1995, however, the NLRB withdrew the complaint and dismissed the charges after determining "that the Union's unlawful conduct appears to have ceased and further proceedings on this matter would not afford a more significant remedy." The NLRB's order left open the possibility of reinstatement of the complaint upon an application of Major Wire, supported by evidence, that the unlawful conduct had not ceased or that the union had committed further unfair labor practices within the following six months.

Concurrent with the NLRB proceedings, the parties were pursuing binding arbitration with the American Arbitration Association ("AAA"). At issue was whether Pond's five day discharge was for "just cause" as required by the parties' collective bargaining agreement. In an opinion dated May 14, 1995, an AAA arbitrator agreed with the union and determined that Pond's suspension was without just cause. Accordingly, the arbitrator ordered that Pond be made whole and that the five day suspension be expunged from his record.

Plaintiffs filed the instant complaint in state court on December 21, 1995. It was subsequently removed to this Court pursuant to 28 U.S.C. §§ 1441, 1446. The complaint contains two counts. Count I alleges violations of portions of the Massachusetts eavesdropping statute, specifically M.G.L. ch. 272, §§ 99 C(1), 99 C(5) and 99 Q(1)–(3). In Count II, Plaintiffs assert unlawful intrusion and misappropriation of private speech in violation of M.G.L. ch. 214, § 1B. According to the complaint, both O'Rourke and the union were aware of the secret recordings, and had actively solicited, encouraged and condoned them. The complaint also asserts that Plaintiffs are people whom Defendants knew, or should have reasonably foreseen, to have been aggrieved, and who were in fact aggrieved, by the recordings.

### III. STANDARD OF REVIEW

The role of summary judgment in civil litigation is to pierce the boilerplate of the pleadings and assay the parties' proof, in an effort to determine whether trial is actually required. *McIntosh v. Antonino,* 71 F.3d 29, 33 (1st Cir.1995) (citing *Wynne v. Tufts Univ. Sch. of Med.,* 976 F.2d 791, 794 (1st Cir.1992), *cert. denied,* 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993)). Summary judgment is appropriate where the record reveals no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

The Court must view the evidence as a whole, rather than in isolation. *Mesnick v. General Electric Co.,* 950 F.2d 816, 822 (1st Cir.1991), *cert. denied,* 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). The facts, and the reasonable inferences derived therefrom, must be viewed in the light most favorable to the non-moving party, *CMM*

---

**2.** The parties have not indicated if and how this charge was ever resolved—although it appears to be related to binding arbitration concerning Pond himself. See discussion *infra.*

*Cable Rep, supra,* who bears the burden of placing at least one material fact into dispute after the moving party shows the absence of any disputed material fact, *Mendes v. Medtronic, Inc.,* 18 F.3d 13, 15 (discussing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986)).

Stated another way, once a summary judgment motion has been filed, the party to whom the motion is directed can defeat it only by showing that a trial-worthy issue exists. *McCarthy v. Northwest Airlines,* 56 F.3d 313, 315 (1st Cir.1995) (citing *National Amusements, Inc. v. Town of Dedham,* 43 F.3d 731, 735 (1st Cir.1995), *cert. denied,* — U.S. ——, 115 S.Ct. 2247, 132 L.Ed.2d 255 (1995)). That is, the target of the summary judgment motion must affirmatively point to specific facts that demonstrate the existence of an authentic dispute, at least with respect to the issues on which the target bears the ultimate burden of proof. *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 48 (1st Cir.1990).

The factual dispute must be "material" and the dispute over it must be "genuine." A "genuine" issue is one that only a finder of fact can properly resolve because it may reasonably be resolved in favor of either party and a "material" issue is one that affects the outcome of the suit. *Collins v. Martella,* 17 F.3d 1, 3 n. 3 (1st Cir.1994) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). Mere allegations or conjecture unsupported in the record are insufficient to raise a genuine issue of material fact. *Horta v. Sullivan,* 4 F.3d 2, 11 (1st Cir.1993). Absent a genuine dispute of material fact, questions of law are appropriate for resolution on summary judgment. *Jimenez v. Peninsular & Oriental Steam Navigation Co.,* 974 F.2d 221, 223 (1st Cir.1992).

## IV. DISCUSSION

The Court will first discuss the union's argument that the complaint is preempted by the NLRA. See *San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). The Court will then address the union's claim for attorneys fees.

## A. NLRA PREEMPTION

██ "The NLRA 'is a comprehensive code passed by Congress to regulate labor relations in activities affecting interstate and foreign commerce.'" *Tamburello v. Comm-Tract Corp.,* 67 F.3d 973, 976 (1st Cir.1995) (quoting *Nash v. Florida Indus. Commission,* 389 U.S. 235, 238, 88 S.Ct. 362, 365–66, 19 L.Ed.2d 438 (1967)), *cert. denied,* — U.S. ——, 116 S.Ct. 1852, 134 L.Ed.2d 952 (1996). The NLRA vests the NLRB with primary jurisdiction over unfair labor practices, see 29 U.S.C. § 158, and therefore " 'pre-empts state and federal court jurisdiction to remedy conduct that is arguably protected or prohibited by [it],'" *Tamburello,* 67 F.3d at 976 (quoting *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emp. of America v. Lockridge,* 403 U.S. 274, 276, 91 S.Ct. 1909, 1913, 29 L.Ed.2d 473 (1971)). As the Supreme Court stated in *Garmon,* "[w]hen an activity is arguably subject to § 7 or § 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the [NLRB] if the danger of state interference with national policy is to be averted." 359 U.S. at 245, 79 S.Ct. at 780.

██ Section 8(b)(3) of the NLRA "makes union refusal to bargain collectively in good faith an unfair labor practice." *NLRB v. U.S. Sonics, Corp.,* 312 F.2d 610, 614 (1st Cir.1963) (citing 29 U.S.C. § 158(b)(3)). Section 8(d) defines the phrase "to bargain collectively," in pertinent part, as

> the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party.

29 U.S.C. § 158(d). As the parties appear to concede, the crux of this case is whether at the April 7, 1994 meeting, the union and Major Wire were attempting "to bargain collectively" as that phrase is defined in the statute.

In this Court's view, there can be no genuine dispute that the April 7, 1994 meeting was an attempt "to bargain collectively"—despite Plaintiffs' arguments to the contrary. The participants, representatives of management and the union, met specifically to investigate the "terms and conditions" of a union member's employment and the meeting undoubtedly involved either questions "arising []under" the parties' collective bargaining agreement or "the execution of" the agreement to the particular union member. 29 U.S.C. § 159(d). Cf. *Providence Hospital & Mercy Hospital v. NLRB*, 93 F.3d 1012, 1016–17 (1st Cir.1996) (the right "to bargain collectively," as defined by 29 U.S.C. § 158(d), "would be little more than a hollow promise if a bargaining representative did not have the concomitant right to muster the information needed to conduct that bargaining effectively"). In fact, even the NLRB complaint states that "collective-bargaining occurred" at the April 7 "grievance meeting" and at other various times. Further, the arbitration in front of the AAA—which clearly dealt with collective bargaining issues—focused on the actions at the April 7 meeting. In short, because the union's alleged activity occurred while the parties were attempting "to bargain collectively," this Court's jurisdiction is preempted by the NLRA.

This Court, however, lacks jurisdiction for an even more fundamental reason. In most cases where NLRA preemption is at issue, a court must decide whether the matter would have been "arguably subject to" the jurisdiction of the NLRA. See, e.g., *Garmon*, 359 U.S. at 245, 79 S.Ct. at 779–80; *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Lockridge*, 403 U.S. at 276, 91 S.Ct. at 1913; *Tamburello*, 67 F.3d at 976. Here, the jurisdiction of the NLRA was more than *arguable;* the NLRB *in fact* asserted jurisdiction, explicitly alleging a violation of § 8(b)(3). *Garmon*, 359 U.S. at 244, 79 S.Ct. at 779 ("When it is clear ... that the activities which a State purports to regulate ... constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield.").

What makes the result in this case even more obvious is the fact that Plaintiffs—notwithstanding their current counsel's representation that he may have advised them differently—chose to proceed in front of the NLRB. Thus, the NLRB's decision to become involved in a surreptitious recording case was not, as the union points out, "pie in the sky." Indeed, the agency has exercised its jurisdiction in a number of similar cases. See, e.g., *Wellstream Corp.*, 313 N.L.R.B. 698, 1994 WL 66661 (1994); *Danzansky–Goldberg Memorial Chapels, Inc. v. Drivers, Chauffeurs & Helpers Local Union 639*, 264 N.L.R.B. 840, 842, 1982 WL 23754 (1982); *Davis & Geck Div. of American Cyanamid*, 107 L.R.R.M. 1527 (1981); *Carpenter Sprinkler Corp.*, 238 N.L.R.B. 974 (1978).

Plaintiffs nevertheless argue—as a fallback position—that their case fits within an exception to NLRA preemption. In this regard, the First Circuit recognizes three general exceptions to the preemption doctrine: (1) "where Congress has expressly carved out an exception to the NLRB's primary jurisdiction," (2) where "the regulated activity touches 'interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction,' courts 'could not infer that Congress had deprived the States of the power to act,'" and (3) where "the regulated activity is merely a peripheral or collateral concern of the labor laws." *Tamburello* at 977 (quoting *Sears, Roebuck & Co. v. San Diego Dist. Council of Carpenters*, 436 U.S. 180, 195, 98 S.Ct. 1745, 1756–57, 56 L.Ed.2d 209 (1978)) (other citations omitted). Plaintiffs assert that either the second or third exception apply to the facts of this case.[3]

◼ The Supreme Court has identified two prerequisites to the application of the second, "local interests," exception in cases where the underlying conduct is arguably prohibited by the NLRA. First, the state must have a significant interest in protecting the public from the challenged conduct. Second, the controversy which could be present-

---

**3.** Plaintiffs do not dispute the inapplicability of the first exception to their state-law claims. See

*Tamburello* at 980 n. 7.

ed to the court must differ from that which could have been presented to the NLRB. *Tamburello* at 980 (citing *Sears,* 436 U.S. at 196–97, 98 S.Ct. at 1757–58).

Plaintiffs here claim that the matters raised in their complaint are clearly "deeply rooted in local feeling and responsibility" because, in enacting the eavesdropping statutes allegedly violated, the Massachusetts legislature made criminal the union's conduct and provided for civil and criminal penalties. For purposes here, the Court assumes that Massachusetts does have a significant interest in protecting citizens from being tape-recorded surreptitiously (Count I) and in ensuring their rights of privacy (Count II). The Court is compelled, however, to find that Plaintiffs' state-law claims raise identical questions as would be, and in fact were, raised in the unfair labor practice proceeding before the NLRA—namely, whether the union knowingly, and without the knowledge or consent of the employer, tape-recorded meetings between the parties at which collective bargaining occurred. Because the controversy presented to this Court is the same as that presented to the NLRB, under *Garmon, Sears,* and *Tamburello,* Plaintiffs' claims do not fall within the "local interests" exception to NLRA preemption.

■ Plaintiffs also assert that the regulated activity is at most "a peripheral or collateral concern of the labor laws" and therefore falls within the third exception to NLRA preemption. In essence, Plaintiffs argue that their claims against Defendants can be addressed without having to interpret a collective bargaining agreement. For many of the same reasons already noted, however, Plaintiffs' attempt to describe the union's actions as a mere "peripheral or collateral concern of the labors laws" is inaccurate. To repeat, (1) Plaintiffs, asserting a specific violation of the labor laws, challenged this exact conduct in front of the NLRB, (2) the NLRB exercised its jurisdiction and issued a com-

plaint against the union concerning the union's conduct, a complaint it initially declined to dismiss, and (3) the NLRB has assumed jurisdiction over this type of case on a number of previous occasions.

At bottom, Plaintiffs' claims are preempted by the NLRA. There is no need to expend additional judicial resources on issues that not only should have been, but were in fact, litigated in front of the appropriate administrative agency. If Plaintiffs had wanted to appeal the NLRB's decision, they should have gone through the proper channels. See *International Broth. of Boilermakers v. Hardeman,* 401 U.S. 233, 240, 91 S.Ct. 609, 614, 28 L.Ed.2d 10 (1971) (only way federal court can apply the NLRA is "by normal mechanism of review of actions of the NLRB").[4]

## B. RULE 11 SANCTIONS

■ Finally, the union asserts that it is entitled to costs and reasonable attorneys fees pursuant to Fed.R.Civ.P. 11 for having to defend against this action. According to the union, Plaintiffs' "transparent attempt to circumvent the[ ] authority [of the NLRB and AAA] by casting this labor dispute as a violation of their state statutory rights demonstrates their contempt for both federal law and the authority of this court." Notwithstanding these strong allegations, this Court sees no reason in the existing record for applying Rule 11 sanctions. At the very least, the intimations by the NLRB that the union's tape-recording was improper makes Plaintiffs' action non-frivolous.

## V. CONCLUSION

For the foregoing reasons, the Court recommends (1) that Defendant's motion to dismiss, construed as a motion for summary judgment, be ALLOWED, and (2) that the

---

4. The union also contends (1) that the action is barred by the NLRA's six month statute of limitations as well as the doctrines of collateral estoppel and res judicata and (2) that the claims against O'Rourke and Pond in their individual capacities are prohibited. Since the case is

clearly preempted by the NLRA, it is unnecessary to address these alternative arguments, other than to state that, in regards to the latter point, Plaintiffs have supplied no facts indicating that either Pond or O'Rourke were acting in anything other than their official capacities.

union's motion for sanctions be DENIED.[5]

Dated: October 18, 1996

5. The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within ten (10) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. See *Keating v. Secretary of Health & Human Services*, 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete*, 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir.1980); *United States v. Vega*, 678 F.2d 376, 378–79 (1st Cir.1982); and *Scott v. Schweiker*, 702 F:2d 13, 14 (1st Cir.1983). See also *Thomas v. Arn*, 474 U.S. 140, 154–55, 106 S.Ct. 466, 474–75, 88 L.Ed.2d 435 (1985). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.