STATE EMPLOYMENT RELATIONS BOARD et al., Appellees,

v.

UNION TOWNSHIP TRUSTEES et al., Appellants.

[Cite as *State Emp. Relations Bd. v. Union Twp. Trustees* (2001), 142 Ohio App.3d 199.]

Court of Appeals of Ohio,
Twelfth District, Clermont County.

No. CA2000–10–079.

Decided April 2, 2001.

200

*Haynes & Snyder* and *Terrell B. Snyder,* for appellee.

*Schroeder, Maundrell, Barbiere & Powers* and *Lawrence E. Barbiere,* for appellants.

WALSH, Judge.

Appellant, the Board of Trustees of Union Township, Clermont County, Ohio ("Union Township"), appeals the determination of the Clermont County Court of Common Pleas, which found that substantial evidence supports the determination of appellee, the State Employment Relations Board ("SERB"), that Union Township engaged in unfair labor practices ("ULPs"). We affirm the common pleas court's determination.

Union Township is a public employer subject to R.C. Chapter 4117. Appellee Union Township Firefighters' Local 3412 ("Local 3412"), James Watkins, and Spencer Thomas filed ULP charges with SERB after Union Township terminated Watkins's and Thomas's employment with the Union Township Fire Department ("UTFD"). The charges, filed under R.C. 4117.11, alleged that Union Township, a public employer, had engaged in actions that interfered with the exercise of rights guaranteed under R.C. Chapter 4117. The ULPs arose from an incident involving Fire Captain Jay Turpin.

On January 14, 1999, Turpin went to Sam's Club while on duty. As he attempted to obtain tax-exempt status for items he bought for the UTFD, he allegedly became angry at the checker and made inappropriate comments. James Watkins and Spencer Thomas, who were both employed by UTFD and members of Local 3412, heard about the incident from two union members. The union members who approached Watkins and Thomas had not, however, been eyewitnesses to the incident.

The union members had approached Watkins and Thomas due to their respective positions as president and vice president of Local 3412. Because other employees had been disciplined for bringing Turpin's conduct to management's attention, the union members feared that any attempt to bring management's attention to Turpin's conduct on this occasion would bring retribution in the form of job discipline or termination. The union members insisted that Watkins and Thomas shield their identities.

Watkins and Thomas decided to go to Sam's Club to investigate the facts that lay behind the incident. They did so as a result of an informal meeting they had

with Fire Chief Stanley Deimling two years before in 1997. At the 1997 meeting, Watkins and Thomas discussed both their own and other firefighters' concerns about low morale among UTFD employees. The employees' concerns centered around instances of inappropriate conduct by Captain Turpin.

Deimling told Watkins and Thomas that the instances they related of Turpin's prior alleged misconduct amounted to outdated hearsay upon which he could not act. Deimling stated that in order for him to act upon the employees' concerns, he required timely, written documentation of instances of Turpin's misconduct, instead of hearsay. Both Watkins and Thomas understood Chief Deimling's statements to mean that they must obtain factual information before reporting any future misconduct by Turpin.

Watkins and Thomas then went to Sam's Club to investigate the incident. Watkins wore his union jacket. Both Watkins and Thomas represented themselves as union members and told Sam's Club employees that they were investigating a matter of union concern. They spoke with the Sam's Club employees who had been involved in the incident and ascertained its factual underpinnings. After verifying the union members' statements, Watkins wrote a letter to Deimling, on union letterhead and signed as union President, explaining their actions, expressing concern over Turpin's conduct, and asking that Turpin be disciplined.

When he received the letter, Deimling's initial response was to conduct an investigation into the conduct of Watkins and Thomas. Deimling asked Watkins and Thomas to disclose the names of the union members who had initially told them about Turpin's conduct. They refused to disclose the union members' names, alleging that to do so would reveal confidential union information. On February 1, 1999, Deimling recommended to Union Township administrator Ken Geis that Watkins and Thomas be terminated for conducting an unauthorized investigation and for failing to disclose the union members' names.

Nevertheless, Deimling began to conduct an investigation of the incident. Watkins's letter gave the names of people who had been involved in the Sam's Club incident and provided Deimling with a good basis upon which to conduct his investigation. As a result of Watkins's letter, Deimling was able to speak to the Sam's Club employees who had been involved in the incident. Although Deimling never completed his investigation, Union Township conducted its own investigation into the incident.

Geis held disciplinary hearings for both Watkins and Thomas on February 18, 1999. At the hearings, both Watkins and Thomas refused to disclose the informants' names on the advice of counsel. They explained to Geis that disclosing those members' names would constitute a ULP by the union. As a result of the disciplinary hearings, Geis made a written recommendation to the

Union Township trustees that Union Township terminate Watkins's and Thomas's employment with UTFD.

Union Township conducted a disciplinary hearing on March 9, 1999, at which evidence was presented and Watkins and Thomas were represented by counsel. After the hearing, the Union Township trustees unanimously voted to terminate Watkins's and Thomas's employment with UTFD for conducting an unauthorized investigation and for failing to disclose the names of the union members who had initially told them about Turpin's conduct.

On March 25, 1999, Local 3412 filed ULP charges with SERB claiming that Union Township's actions in firing Watkins and Thomas interfered with their rights to engage in protected concerted activity.[1] SERB held an administrative hearing on the charges. The administrative law judge ("ALJ") heard substantial evidence relating to the charges, including the testimony of Watkins, Thomas, Deimling, Geis, and all three of the Union Township trustees. Thereafter, the ALJ made findings of fact and conclusions of law, determining that Union Township had committed a ULP by terminating Watkins's and Thomas's employment with UTFD because they engaged in protected activities. SERB wholly adopted the ALJ's conclusions and ordered that Watkins and Thomas be restored to employment with back pay.

Local 3412 filed a motion asking the common pleas court to affirm SERB's ULP determination on the merits. After argument by Local 3412 and Union Township, the common pleas court found substantial evidence to support the ALJ's determination and affirmed SERB's decision. Union Township now appeals the common pleas court's ruling.

Assignment of Error No. 1:

"The trial court erred in affirming the February 14, 2000 order issued by the State Employment Relations Board finding that Union Township committed an unfair labor practice."

In its first issue under its sole assignment of error, Union Township claims that SERB had no jurisdiction to consider the ULPs that Local 3412 filed with SERB.

---

1. On March 15, 1999, Watkins and Thomas filed separate formal grievances under Local 3412's collective bargaining agreement ("CBA") with Union Township. After the initial three steps of review specified in the CBA failed to resolve the grievance, Watkins and Thomas, with Local 3412 as their representative, demanded arbitration of the claims. Union Township filed a complaint in the trial court seeking a declaratory judgment that, under the CBA, an appeal to the court of common pleas was Watkins's and Thomas's sole remedy for their terminations. The trial court dismissed Union Township's complaint. The propriety of the trial court's order dismissing Union Township's complaint will be addressed in a separate but related appeal currently pending before this court, *Union Twp. v. Union Twp. Professional Firefighters' Local 3412*, Clermont App. No. 2000–08–064.

Union Township contends that the common pleas court had sole jurisdiction to consider an appeal from the firefighters' removal and that the firefighters' activities did not constitute protected concerted activity over which SERB has jurisdiction under R.C. Chapter 4117. SERB and Local 3412 respond that SERB had exclusive jurisdiction to determine whether the firefighters' actions fell within the definition of protected concerted activity and whether Union Township's actions in firing them therefore constituted ULPs as defined by R.C. 4117.11.

■■■■ R.C. Chapter 4117 was meant to regulate in a comprehensive manner the labor relations between public employees and public employers. *Franklin Cty. Law Enforcement Assn. v. Fraternal Order of Police, Capital City Lodge No. 9* (1991), 59 Ohio St.3d 167, 170–171, 572 N.E.2d 87, 90–92. Therefore, exclusive jurisdiction to resolve ULPs is vested in SERB in two general areas: (1) where one of the parties files charges with SERB alleging a ULP under R.C. 4117.11, or (2) where a complaint brought before the court of common pleas alleges conduct that constitutes a ULP specifically enumerated in R.C. 4117.11, and the common pleas court therefore dismissed the complaint for lack of subject-matter jurisdiction. *E. Cleveland v. E. Cleveland Firefighters Local 500* (1994), 70 Ohio St.3d 125, 127–128, 637 N.E.2d 878, 879–881. Thus, a court of common pleas is without jurisdiction to render a declaratory judgment determining rights that are established or limited by R.C. 4117.11 where SERB is asked to make the same determination in the context of a ULP charge. *Franklin Cty. Sheriff's Dept. v. Fraternal Order of Police, Capital City Lodge No. 9* (1991), 59 Ohio St.3d 173, 176, 572 N.E.2d 93, 95–96.

Here, Local 3412 filed charges with SERB alleging that Union Township engaged in ULPs under R.C. 4117.11(A)(1), (A)(3), (A)(4), and (A)(8). Those statutory sections read:

"(A) It is an unfair labor practice for a public employer, its agents, or representatives to:

"(1) Interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in Chapter 4117. of the Revised Code[;]

"* * *

"(3) Discriminate in regard to hire or tenure of employment or any term or condition of employment on the basis of the exercise of rights guaranteed by Chapter 4117. of the Revised Code[;]

"* * *

"(4) Discharge or otherwise discriminate against an employee because he has filed charges or given testimony under Chapter 4117. of the Revised Code;

"* * *

"(8) Cause or attempt to cause an employee organization, its agents, or representatives to violate division (B) of this section."

Although Local 3412 filed ULPs with SERB under these sections of R.C. 4117.11, Union Township contends that R.C. 505.38 divested SERB of jurisdiction to consider the ULP charges since the statute provides Watkins's and Thomas's only remedy: an appeal of their termination that may only be had in the common pleas court of the county.

The pertinent portion of R.C. 505.38 reads:

"In case of a removal of a fire chief or any member of the fire department of a township or district, an appeal may be had from the decision of the board to the court of common pleas of the county in which such township or district fire department is situated, to determine the sufficiency of the cause of removal."

■ While the county's common pleas court has jurisdiction over an appeal from Union Township's determination to remove a firefighter, the common pleas court aptly observed that Union Township's decision terminating the firefighters was not "appealed" to SERB.

An appeal of a firefighter's removal under R.C. 505.38 is substantively different from charges alleging ULPs filed with SERB under R.C. 4117.11. In an appeal to the common pleas court under R.C. 505.38, the common pleas court must determine the sufficiency of the cause for removal and whether the township followed the appropriate statutory procedure in instigating the removal. See, e.g., *Crist v. Battle Run Fire Dist. Bd. of Trustees* (1995), 105 Ohio App.3d 111, 663 N.E.2d 722.

The ULP charges, however, did not challenge the cause for the firefighters' removal. Instead, the firefighters' allegations that Union Township violated specific statutory provisions in R.C. 4117.11 required SERB to determine whether Union Township's conduct interfered with rights guaranteed the employees or otherwise violated the statute. SERB had exclusive jurisdiction to decide matters committed to it under R.C. Chapter 4117.11. *Capital City Lodge No. 9*, 59 Ohio St.3d at 170, 572 N.E.2d at 90–91.

Nevertheless, where a party asserts rights independent of R.C. Chapter 4117, the party's complaint may properly be heard in common pleas court. *Id.* at 170–171, 572 N.E.2d at 90–92. Since SERB's determination of the ULP charges rested upon substantively different claims than an appeal of a firefighter's removal under R.C. 505.38, we see no reason that both the common pleas court and SERB may not have jurisdiction over distinct claims that arise under R.C. 505.38 and R.C. Chapter 4117 and involve different determinations, even though the claims arise from the same underlying facts. See *Kingsbury v. Southeast Local School Dist. Bd. of Edn.* (1989), 58 Ohio App.3d 94, 96, 568 N.E.2d 752,

753–754; see, also, *Franklin Cty. Sheriff's Dept.*, 59 Ohio St.3d at 176, 572 N.E.2d 93 (common pleas court loses jurisdiction where SERB is asked to make "the same determination" in the context of ULPs).

Moreover, even if we found that R.C. 505.38 conflicted with ULP charges brought under R.C. 4117.11, R.C. 4117.10 specifically states that SERB's jurisdiction takes precedence over a conflicting statute: "this chapter prevails over any and all other conflicting laws, resolutions, provisions, present or future, except as otherwise specified by the general assembly." R.C. 505.38 has not been specified as an exception to SERB's jurisdiction. Therefore, R.C. 505.38 cannot divest SERB of authority to consider ULP charges over which SERB has exclusive jurisdiction.

■ Union Township also contends that SERB had no jurisdiction because the activities in which the firefighters engaged could not, by definition, constitute the kind of "concerted activity" protected by R.C. 4117.11. A ULP occurs when an employer takes an action regarding an employee that is motivated by antiunion animus. *State Emp. Relations Bd. v. Adena Local School Dist. Bd. of Edn.* (1993), 66 Ohio St.3d 485, 495, 613 N.E.2d 605, 612–613. SERB's finding of a ULP is a reasonable interpretation of the statutory directive when a preponderance of the evidence supports a finding that an employer acted at least in part to discriminate against an employee for the exercise of protected rights. *Id.* at 497, 613 N.E.2d at 614.

The rights guaranteed to public employees, and therefore protected from ULPs, are enumerated in R.C. 4117.03. That statute states:

"(A) Public employees have the right to:

"(1) Form, join, assist, or participate in, or refrain from forming, joining, assisting, or participating in, except as otherwise provided in Chapter 4117. of the Revised Code, any employee organization of their own choosing;

"(2) Engage in other concerted activities for the purpose of collective bargaining or other mutual aid and protection."

■ R.C. Chapter 4117's treatment of ULP cases is modeled to a large extent on the federal statutes that empower the NLRB to resolve ULP charges in cases within its jurisdiction. See *Adena*, 66 Ohio St.3d at 495, 613 N.E.2d at 612–613. Therefore, we look to federal precedent to define the term "concerted activity" in R.C. 4117.03.

Like R.C. 4117.03, the National Labor Relations Act, Section 151 *et seq.*, Title 29, U.S.Code, provides that "[e]mployees shall have the right * * * to engage in * * * concerted activities for the purpose of collective bargaining or other mutual aid or protection * * *." Section 157, Title 29, U.S.Code. This guarantee is

implemented by Section 158(a)(1), which makes it a ULP for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [Section 157]." In *Eastex, Inc. v. Natl. Labor Relations Bd.* (1978), 437 U.S. 556, 566, 98 S.Ct. 2505, 2512–2513, 57 L.Ed.2d 428, 439, the Supreme Court noted that the "mutual aid or protection" clause protects employees from retaliation by their employers when they seek to improve working conditions by resorting to administrative and judicial forums.

*Eastex* rejected an attempt to narrowly interpret Section 157, and refused to delineate precisely the boundaries of the "mutual aid or protection" clause. 437 U.S. at 568, 98 S.Ct. at 2513, 57 L.Ed.2d at 440. The *Eastex* court instead determined that the statute should be broadly construed so as to include the wide variety of situations that might be considered concerted activity by employees. *Id.* The court noted:

"It is true, of course, that some concerted activity bears a less immediate relationship to employees' interest as employees than other such activity. We may assume at some point the relationship becomes so attenuated that an activity cannot fairly be deemed to come within the 'mutual aid or protection' clause." *Id.* at 567, 98 S.Ct. at 2513, 57 L.Ed.2d at 439–440.

The Sixth Circuit has interpreted *Eastex* to mean that the question is whether the employees' actions are sufficiently related to their "interest as employees" to come within the mutual aid or protection clause of Section 7. *Squier Distrib. Co. v. Local 7, Internatl. Bhd. of Teamsters* (C.A.6, 1986), 801 F.2d 238, 240–241. In other words, concerted activities are protected if the activities might reasonably be seen as affecting terms or conditions of employment. *Natl. Labor Relations Bd. v. Mike Yurosek & Son, Inc.* (C.A.9, 1995), 53 F.3d 261, 266; *Gatliff Coal Co. v. Natl. Labor Relations Bd.* (C.A.6, 1992), 953 F.2d 247, 251; *Natl. Labor Relations Bd. v. MCI Mining Corp.* (C.A.6, 1988), 849 F.2d 609.

Union Township cites *Vemco, Inc. v. Natl. Labor Relations Bd.* (C.A.6, 1996), 79 F.3d 526, 530, for the proposition that protected activity is defined as activity that manifests a "labor dispute." *Vemco* itself, however, limits its holding to its own facts. Moreover, even if *Vemco* had not so limited itself, both Ohio law and federal law have defined a labor dispute as a controversy between employer and employees concerning wages, working conditions, or terms of employment. *Abate v. Wheeling–Pittsburgh Steel Corp.* (1998), 126 Ohio App.3d 742, 749–750, 711 N.E.2d 299, 303–304; *Natl. Labor Relations Bd. v. Leslie Metal Arts Co.* (C.A.6, 1975), 509 F.2d 811, 813. Thus, even under *Vemco*'s standard, the question remains whether Watkins's and Thomas's actions were sufficiently related to the conditions of their employment so that they are the type of concerted activity that is protected from ULPs.

■ Here, Watkins and Thomas had met informally with Chief Deimling in 1997 to discuss both their own and other firefighters' concerns about low morale among UTFD employees. Many of the employees' concerns centered around instances of inappropriate conduct by Captain Turpin. At the meeting, Deimling stated that the instances of alleged misconduct by Turpin amounted to outdated hearsay upon which he could not act. Deimling stated that, in order for him to act upon the employees' concerns, he required timely, written documentation of future instances of Turpin's misconduct, instead of hearsay. Watkins and Thomas reasonably understood Chief Deimling's statements to mean that they must obtain factual information before reporting any future misconduct by Turpin.

Later, Thomas was told of Turpin's inappropriate conduct at Sam's Club by two members of Local 3412, although neither union member had actually witnessed the conduct. Both Watkins and Thomas testified that the Local 3412 members had approached them by virtue of their respective positions as president and vice president of Local 3412. While the Local 3412 members conveyed the information to Thomas out of their concern for the public's perception of the UTFD, they insisted that Watkins and Thomas shield their identities. The union members feared that any attempt to bring management's attention to Turpin's misconduct would bring retribution in the form of job discipline or termination.

Watkins and Thomas then investigated by going to Sam's Club and speaking with employees who were involved in the incident. While there, they represented themselves as union members and told Sam's Club employees that they were investigating the incident as a matter of union business. Watkins even wore his union jacket. Watkins then wrote a letter to Chief Deimling, on union letterhead and signed as union president, explaining their actions, expressing concern over Turpin's conduct, and asking that Turpin be disciplined. After disciplinary hearings, Union Township terminated Watkins and Thomas for conducting an unauthorized investigation and for insubordination when they failed to divulge the names of the union members who had reported the incident.

The activities of Watkins and Thomas in investigating and reporting Turpin's conduct are reasonably viewed as affecting the terms or conditions of employment. Here, Turpin functioned in a management capacity at the UTFD. Watkins and Thomas investigated and reported the information because continued misconduct on Turpin's part affected the department's internal atmosphere, and, as the ALJ found, consequently threatened the department's effective operation. Watkins and Thomas acted because Turpin's actions had directly affected the working conditions of all of the UTFD's employees in the past, and they continued to do so.

■ To summarize the ALJ's findings, all of Watkins's and Thomas's actions, taken as union officials, were intertwined with promoting employees'

working conditions. Employees' concerted efforts to bring ongoing problems with a supervisor to the attention of management are protected activity. See *Arrow Elec. Co., Inc. v. Natl. Labor Relations Bd.* (C.A.6, 1998), 155 F.3d 762, 766. Since Watkins's and Thomas's actions are the type of action covered by R.C. 4117.11, SERB had exclusive jurisdiction to determine whether Union Township interfered with, restrained, or coerced employees in the exercise of this protected concerted activity.[2]

In its second issue, Union Township contends that, even if the actions of Watkins and Thomas can be considered protected concerted activity, the ALJ's decision is not supported by substantial evidence to show they engaged in that concerted activity. Union Township points specifically to the ALJ's finding of fact No. 53, which reads:

"None of the trustees or Administrator Geis could articulate any logical reason why it was necessary to know the names of the two union members who reported the incident to Mr. Thomas, but who were not witnesses to the incident, when they had complete access to the individuals who were party to the incident and those who observed it. One of the trustees was not even aware that the names so vigorously sought were not names of actual witnesses to the incident."

Union Township asserts that this factual finding, which was critical to the ALJ's decision, is simply wrong, while SERB and Local 3412 assert that the finding is supported by substantial evidence in the record.

When a common pleas court reviews a SERB order, the court must determine whether the order is supported by substantial evidence in the record. *Lorain City Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 259, 533 N.E.2d 264, 265–266. This standard of review for a common pleas court is supplied by R.C. 4117.13(D). *Id.* That statute provides that "[t]he findings of the board [SERB] as to the facts, if supported by substantial evidence, on the record as a whole, are conclusive." An appellate court, however, plays a more limited role than a common pleas court in reviewing the same SERB order. *Id.*, at 260–261, 533 N.E.2d at 266–268. The role of the appellate court is to

---

2. SERB engages in an additional analytical prong in arguing that Watkins's and Thomas's activity is protected concerted activity. Citing *Compuware Corp. v. Natl. Labor Relations Bd.* (C.A.6, 1998), 134 F.3d 1285, 1290, SERB argues that, since employees' rights to engage in concerted activity are not unlimited, this court must balance the concerted activity against the employer's legitimate concerns. We need not perform this analysis in the present case. The court in *Compuware* determined whether an employer's work rule constituted a ULP by balancing employee rights with the employer's legitimate concerns. The court held that "[a]n employer may not enforce a rule that improperly interferes with its employees' statutory right to engage in concerted activity." 134 F.3d at 1290. Here, we do not determine whether Union Township interfered with protected activity; we only determine whether the activity constitutes the type of protected activity over which SERB had jurisdiction.

determine whether the common pleas court has abused its discretion. *Id.* The appellate court must affirm the judgment of the common pleas court if no abuse of discretion occurred. *Id.*

In determining whether Union Township's decision to terminate Watkins and Thomas was motivated by their participation in activity protected under R.C. Chapter 4117, the ALJ considered whether Union Township had given a legitimate business reason for asking Watkins and Thomas to disclose the names of union members who had given them the information but had not observed the incident. In finding of fact No. 53, the ALJ concluded that neither Union Township trustees nor Geis had given a legitimate business reason. Since Union Township lacked any legitimate reason to obtain that information, the ALJ concluded that it had none. Union Township now challenges finding of fact No. 53.

We have examined the record and find that the ALJ's factual conclusion is supported by the testimony. The ALJ based finding of fact No. 53 upon the testimony of all three township trustees and administrator Geis. The evidence supports the ALJ's conclusion that neither the Union Township trustees nor Geis articulated a logical reason why it was necessary to know the names of the two union members who reported the incident.

Claire Walker, one of the Union Township trustees who participated in the decision to fire Watkins and Thomas for failing to reveal the names, testified vaguely that it was "important" to a complete investigation that the township talk to all of the people involved in the chain of reporting to "verify" the facts and "understand" the information. She admitted that the township investigated the incident, but she could not specifically state how knowing the names of the reporting union members, who had not witnessed the Sam's Club incident, would have assisted the investigation.

Another Union Township trustee, Arthur Weidenbein, initially stated that the trustees needed the union members' names because they had to hear firsthand information about the incident. However, Weidenbein's testimony reveals that he was under the impression that the union members who reported Turpin's conduct had been eyewitnesses to the incident. Although Geis and Deimling testified at the discharge hearing that the union members who reported the incident had not been eyewitnesses, Weidenbein was not aware of this fact.

Nor did Geis's explanation reveal a logical reason why Union Township required names of the union members to completely investigate the incident. Although Geis postulated that additional information might not have been transferred to Thomas, he stated that he had no reason to believe Watkins's letter did not contain a complete account of the transferred information. Geis also pro-

fessed that he needed the names of the union members to do a complete investigation. But Geis could only say that he needed the names so that Deimling could direct someone to investigate the incident. Deimling, however, admitted that he had done a complete investigation.

After perusing all of the testimony heard by the ALJ, we find that finding of fact No. 53 is supported by substantial evidence. Neither the trustees nor Geis gave a legitimate reason why Union Township needed the names of the union members who reported the incident to do a complete investigation. Based upon this testimony, the ALJ validly concluded that Union Township had no legitimate business reason to order Watkins and Thomas to disclose the union members' names. The common pleas court did not abuse its discretion in determining that the ALJ's factual findings on this point were supported by substantial evidence.

Union Township's assignment of error is overruled.

*Judgment affirmed.*

WILLIAM W. YOUNG, P.J., and POWELL, J., concur.