CUNNINGHAM et al., Appellees and Cross–Appellants,

v.

GOODYEAR TIRE & RUBBER COMPANY et al., Appellants and Cross–Appellees.

[Cite as *Cunningham v. Goodyear Tire & Rubber Co.* (1995), 104 Ohio App.3d 385.]

Court of Appeals of Ohio,
Ninth District, Summit County.

Nos. 16599, 16694.

Decided June 7, 1995.

386

*Thomas W. Bevan* and *Dale S. Economus*, for appellees and cross-appellants.

*Charles E. Pierson*, for appellants and cross-appellees.

DICKINSON, Judge.

Defendant Goodyear Tire and Rubber Company has appealed from a judgment of the Summit County Court of Common Pleas that plaintiffs Jane L. Cunningham, Amy L. Cunningham, and David W. Cunningham are entitled to participate in the benefits of the Workers' Compensation Fund. Plaintiffs are the survivors of David G. Cunningham, a former employee of defendant. Cunningham died of lung cancer, which plaintiffs alleged was caused by exposure to asbestos during his employment with defendant. Defendant argues that the court of common pleas (1) incorrectly received evidence of quantities of asbestos purchased by defendant between 1951 and 1977, (2) incorrectly received evidence of asbestos removal from defendant's facilities, (3) incorrectly permitted use of hearsay documents during cross-examination of witnesses and incorrectly received those hearsay documents as evidence, (4) incorrectly received evidence that plaintiffs' decedent was exposed to asbestos from a particular brand of tire press in violation of the doctrine of *res judicata*, and (5) incorrectly awarded attorney fees and costs to plaintiffs. Plaintiffs have cross-appealed and argue that the trial court incorrectly awarded them less than their actual attorney fees and costs. This court reverses, in part, the award of costs because that award included deposition costs of expert witnesses who testified at trial, and such costs are not recoverable pursuant to R.C. 4123.519. The remainder of the judgment, however, is affirmed because (1) the court of common pleas did not abuse its discretion by receiving evidence of asbestos purchased by defendant between 1951 and 1977, (2) the court of common pleas did not abuse its discretion by receiving evidence of asbestos removal from defendant's facilities, (3) defendant failed to object to the use of the documents at issue during cross-examination of witnesses and has failed to demonstrate that it was prejudiced by the receipt of those documents into evidence, (4) defendant did not properly preserve its *res judicata* argument for appeal, and (5) the court of common pleas correctly awarded attorney fees and costs to plaintiffs.

## I

### A

David G. Cunningham was employed by defendant Goodyear Tire and Rubber Company from 1958 until 1960 and from 1962 until 1982. He died of lung cancer on October 27, 1988.

Plaintiffs, Cunningham's widow and two of his children, filed an application for death benefits with the Bureau of Workers' Compensation. Their application was denied at the various administrative levels, and, on November 4, 1992, they appealed that denial to the Summit County Court of Common Pleas. Their claim was tried before a jury from November 1, 1993, through November 15, 1993. The jury determined that plaintiffs are entitled to participate in the Workers' Compensation Fund as a result of their decedent's death. On November 29, 1993, the court of common pleas entered judgment consistent with the jury's verdict, and defendant timely appealed to this court.

### B

Plaintiffs claimed that decedent's lung cancer was caused by exposure to asbestos during his employment by defendant. Asbestos was commonly used in the rubber industry during the period of the decedent's employment, primarily as an insulator. Defendant admitted that asbestos was used throughout its facilities. It further admitted that decedent was exposed to asbestos during his employment, but maintained that his exposure was not sufficient to cause cancer:

"Cunningham was exposed to asbestos between 1959 and 1982 only in the sense that all persons who work in or near a rubber factory are exposed to asbestos fibers. He was not exposed to asbestos sufficient to cause disease in the lung.

" * * * *

"Cunningham's duties at Goodyear did not require him to work in close proximity to asbestos-containing products; he did occasionally pass, or walk near, or observe machinery that had asbestos-containing parts."

Defendant argued that the decedent's cancer was caused solely by cigarette smoking.

Plaintiffs' decedent held a number of positions during his employment by defendant. Because of the various positions that he held, he worked at a number of different locations in defendant's facilities. Plaintiffs presented evidence that he was potentially exposed to asbestos from machinery, pipe insulation, and general plant conditions during his employment. The parties presented conflicting medical testimony about whether his exposure to asbestos was sufficient to have caused his cancer.

## II

### A

■ Defendant's first assignment of error is that the court of common pleas incorrectly received evidence of quantities of asbestos purchased by defendant between 1951 and 1977. Specifically, the court of common pleas permitted plaintiffs to read depositions of two asbestos suppliers into evidence. Those depositions included testimony regarding the number of tons of raw asbestos purchased by Goodyear from those suppliers.

Although defendant has failed to cite a single rule, statute, or case in support of its first assignment of error, its argument appears to be that the prejudicial nature of the testimony regarding its asbestos purchases outweighed that testimony's probative value. Among other things, it has asserted that there was no evidence that decedent was exposed to asbestos from the shipments at issue; that it had previously admitted "the presence of asbestos insulation in numerous parts of the plants, in several different items of machinery, piping, in products such as tiles, gaskets and brakes, and admitted many different items of fiber purchase"; and that it was unable to contradict the numbers provided by the suppliers because its document retention policy provides that purchase orders are destroyed after three years.

Evid.R. 403(A) provides that relevant evidence "is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." The balancing required by Evid.R. 403(A) is left to a trial court's discretion. *State v. Rahman* (1986), 23 Ohio St.3d 146, 152, 23 OBR 315, 320, 492 N.E.2d 401, 407–408.

Defendant argued in this case that although plaintiffs' decedent was exposed to asbestos at work, he was not exposed to a sufficient amount of asbestos to cause his lung cancer. Evidence that defendant purchased large amounts of raw asbestos before and during plaintiffs' decedent's employment tended to make it more probable that he was exposed to an amount of asbestos sufficient to cause his cancer. Defendant was free to, and did, present evidence that plaintiffs' decedent would not have had contact with the raw asbestos at issue. This court cannot say, however, that admission of the evidence of the amount of raw asbestos purchased by defendant was so unreasonable, arbitrary, or unconscionable that it was an abuse of discretion. See *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482–483, 450 N.E.2d 1140, 1141–1142. Defendant's first assignment of error is overruled.

### B

■ Defendant's second assignment of error is that the court of common pleas incorrectly received evidence of asbestos removal from defendant's facilities.

Again, defendant has failed to cite a single rule, statute, or case in support of this assignment of error. Again, the substance of its argument appears to be that the prejudicial nature of certain evidence was outweighed by its prejudicial effect. Specifically, it has complained that the court of common pleas received evidence regarding asbestos abatement techniques employed by defendant at its facilities during 1986, five years after plaintiffs' decedent's last employment. This court cannot say that admission of the evidence at issue was so unreasonable, arbitrary, or unconscionable that it was an abuse of discretion. *Id.* Defendant's second assignment of error is overruled.

## C

Defendant's third assignment of error is that the court of common pleas incorrectly permitted use of hearsay documents during cross-examination of witnesses and incorrectly received those hearsay documents as evidence. The documents at issue are a number of medical articles, or excerpts of medical articles, about asbestos, cancer, or related subjects. Plaintiffs used each of the documents at issue during their examination or cross-examination of various witnesses. In fact, they had the witnesses read parts of the documents to the jury. Defendant failed to object to such use at the time it was occurring. Later, plaintiffs offered the documents themselves into evidence and defendant did object, at least to some of them.

To the extent that defendant's assignment of error is related to the use of the documents at issue during examination of witnesses, defendant waived any error in that use by failing to object at the time it was occurring. A party's failure to object to the receipt or use of evidence when the alleged error could be remedied waives that party's right to address that issue on appeal. *Mallin v. Mallin* (1988), 44 Ohio App.3d 53, 54–55, 541 N.E.2d 116, 116–118.

To the extent that defendant's assignment of error is related to the actual receipt of the documents into evidence, it has failed to demonstrate that it was prejudiced by that receipt. Pursuant to Civ.R. 61, any error or defect in a proceeding which does not affect a substantial right of a party must be disregarded. As noted above, defendant failed to object when plaintiffs had various witnesses read parts of the documents to the jury.[1] For example, at page 1036 of the trial transcript, plaintiffs had one of their experts read the following excerpt to the jury:

---

1. This court has been unable to locate a request in the record that the jury be instructed that the parts of the documents read to it were for impeachment only and should not be considered as substantive evidence.

"Q. I will represent to you that this is page 588 of a very long article and it involves the carcinoma of the lung portion. Would you read for the ladies and gentlemen of the jury under Carcinoma of the Lung the first three sentences down to where it says Figure 36?

"A. 'The association of lung cancer with exposure to asbestos has been established conclusively by epidemiologic studies conducted in a number of different population groups. Asbestos associated lung cancer usually has a latency period in excess of 20 years, but generally occurs at an earlier age than does lung cancer in nonexposed persons.'

"Q. 'Generally occurs at an earlier age—'

"A. '—than does lung cancer in nonexposed people.' "

In view of the fact that plaintiffs were permitted to have various witnesses read the most prejudicial parts of the documents at issue to the jury, this court cannot conclude that defendant was prejudiced by those same articles being received into evidence and being present in the jury room during the jury's deliberations.[2] Defendant's third assignment of error is overruled.

## D

■ Defendant's fourth assignment of error is that the court of common pleas incorrectly received evidence that plaintiffs' decedent was exposed to asbestos from a particular brand of tire press in violation of the doctrine of *res judicata*. As with its first and second assignments of error, defendant has failed to cite a single rule, statute, or case in support of this assignment of error.

According to defendant, plaintiff Jane L. Cunningham, decedent's widow, while serving as executor of decedent's estate, brought an action against NRM Corporation, a manufacturer of tire presses, in which she alleged that NRM's "asbestos-containing curing presses at Goodyear, caused the decedent * *. * to contract the lung cancer that caused his death." Further, according to defendant, "[t]he jury in that case brought in a unanimous verdict holding, in effect, that the asbestos in NRM curing presses did not cause [decedent's] death."

On October 29, 1993, defendant filed a motion *in limine* by which it sought a ruling from the court of common pleas that plaintiffs would not be permitted to present evidence "to prove decedent's exposure to curing presses, for the reason that this issue has been tried and found against [plaintiffs]." Defendant's motion was discussed at the commencement of trial, and the court indicated that the

---

2. Plaintiffs have asserted that the jury could not have possibly read the documents at issue during its deliberations because those deliberations lasted less than two hours. The duration of the jury's deliberations, however, is not reflected in the record before this court.

issue raised by it would be dealt with during the trial. During trial, immediately before plaintiffs called a former NRM employee as a witness, the court raised defendant's motion *in limine* and the parties discussed their views of the doctrine of collateral estoppel. The court noted: "Well, of course I don't know what he's going to testify to." Following some further discussion, the court stated:

"Well, if he's going to testify as to the composition of presses generally, even including that they all are similar to NRM and that they contain asbestos components and when they're changed they may emit some kind of asbestos material, I'll permit that, I will permit that.

"You may have your objection to that and put that in the record."

Plaintiffs then called the witness to the stand and proceeded to examine him. Defendant failed to object to any question asked the witness during direct or redirect examination. Although defendant, in its brief to this court, has stated that the witness "proceeded to testify fully and freely about all curing presses including specifically NRM presses" and that "[t]his extensive testimony, totally unrelated to the decedent's actual exposure, served only to string out and emphasize a fictional conjecture: that [decedent] breathed in some fiber from a curing-press platen or dome,—although he never worked in the curing-press departments and so far as anyone knows, never witnessed a repair job on a press, or saw a defective platen, or came near a press installation," it has failed to point to any specific response provided by the witness at issue that it contends violated *res judicata*, as set forth in its assignment of error, or collateral estoppel, as was argued to the court of common pleas.

A ruling on a motion *in limine* is "a tentative, interlocutory, precautionary ruling by the trial court reflecting its anticipatory treatment of [an] evidentiary issue." *State v. Grubb* (1986), 28 Ohio St.3d 199, 201–202, 28 OBR 285, 288, 503 N.E.2d 142, 145. "Failure to object to evidence at the trial constitutes a waiver of any challenge, regardless of the disposition made for a preliminary motion *in limine*." *Id.* at 203, 28 OBR at 289, 503 N.E.2d at 146–147, quoting *State v. Wilson* (1982), 8 Ohio App.3d 216, 220, 8 OBR 288, 291, 456 N.E.2d 1287, 1291. See *State v. Maurer* (1984), 15 Ohio St.3d 239, 259–260, 15 OBR 379, 396–397, 473 N.E.2d 768, 787–788. By failing to object to specific testimony that it believed was barred by either the doctrine of *res judicata* or collateral estoppel, at the time that testimony was proffered, defendant waived its objection. Accordingly, its fourth assignment of error is overruled.

## E

Defendant's fifth assignment of error is that the court of common pleas incorrectly awarded costs and attorney fees to plaintiffs. Defendant has argued

(1) that the award was premature and (2) that it contained litigation expenses which had been incorrectly classified as costs. Plaintiffs filed a cross-appeal and their sole assignment of error is that their reasonable litigation expenses should have been awarded as costs.

1

R.C. 4123.512[3] provides for the payment of costs and attorney fees. Subsection (D)[4] provides payment for costs of certain depositions. Subsection (F)[5] provides payment of general costs, including attorney fees, "to be fixed by the trial judge" if a claimant's "right to participate * * * in the fund is established upon the final determination of an appeal."

 Defendant has argued that costs and attorney fees should not have been awarded in this case because it had appealed the decision of the court of common pleas to this court. In support of its argument, it has claimed that the restriction to "final determination of an appeal" in Subsection (F) means that costs and attorney fees may not be taxed until the exhaustion of all appeals from the decision of the court of common pleas. When reviewed within the statutory framework, however, "final determination of an appeal" refers to the decision of the court of common pleas.

Pursuant to the statutory workers' compensation scheme, decisions of the Industrial Commission are appealed to courts of common pleas. In *Hospitality Motor Inns, Inc. v. Gillespie* (1981), 66 Ohio St.2d 206, 20 O.O.3d 209, 421 N.E.2d

---

3. R.C. 4123.519 was amended and renumbered R.C. 4123.512, effective October 20, 1993. R.C. 4123.512 contains a provision making it retroactive:

"Any action pending in common pleas court or any other court on January 1, 1986, under this section is governed by former section[] * * * 4123.519 * * * of the Revised Code."

Any action filed in common pleas court or any other court after January 1, 1986, is governed by R.C. 4123.512. Therefore, although this case was filed in the Summit County Court of Common Pleas on November 4, 1992, R.C. 4123.512 is the governing statute.

4. R.C. 4123.512(D) provides:

"Any party may file with the clerk prior to the trial of the action a deposition of any physician * * * which deposition may be read in the trial of the action even though the physician is * * * subject to service * * *. The bureau of workers' compensation shall pay the cost of the deposition filed in court and of copies of the deposition for each party from the surplus fund and charge the costs thereof against the unsuccessful party if the claimant's right to participate * * * is * * * established in the appeal."

5. R.C. 4123.512(F) provides:

"The cost of any legal proceedings authorized by this section, including an attorney's fee to the claimant's attorney to be fixed by the trial judge, based upon the effort expended, in the event the claimant's right to participate * * * in the fund is established upon the final determination of an appeal, shall be taxed against the employer or the commission if the commission or the administrator rather than the employer contested the right of the claimant to participate in the fund. The attorney's fee shall not exceed twenty-five hundred dollars."

134, syllabus, the Ohio Supreme Court stated, "the 'legal proceedings' contemplated by R.C. 4123.519 [now 4123.512] is the act of appeal [to the court of common pleas], itself." In addition, the statute's express language authorizes a court of common pleas to determine the amount of costs and attorney fees. Accordingly, the "final determination of an appeal" referred to in R.C. 4123.512(F) is the appeal from the industrial commission's decision to the court of common pleas. Therefore, to the extent that costs and attorney fees were awarded pursuant to 4123.512(F), the award was not premature. Moreover, to the extent that costs were awarded pursuant to 4123.512(D), the award was not premature because those costs may be granted at any time and are recoverable regardless of whether the claimant establishes a right to participate in the fund.

2

■■■ As stated previously, both parties argue that the amount of costs taxed to defendant was incorrect.[6] Defendant argues that the awarded amount should be reduced, while plaintiffs argue that it should be increased to include all of their expenses. According to plaintiffs, they were "entitled to be reimbursed for all reasonable expenses incurred, since the jury verdict established their right to participate in the Bureau of Workers' Compensation Fund." The statute, however, does not provide for recovery of "all reasonable expenses." It provides only for costs.

■■■■■ Costs have been defined as "the statutory fees to which officers, witnesses, jurors and others are entitled for their services in an action." *Centennial Ins. Co. v. Liberty Mut. Ins. Co.* (1982), 69 Ohio St.2d 50, 23 O.O.3d 88, 430 N.E.2d 925. Litigation expenses are not considered costs unless a statute expressly permits a court to tax them as costs. *Id.* at 51, 23 O.O.3d at 89–90, 430 N.E.2d at 926–927.

R.C. 4123.512(D) expressly permits a court to tax "the cost of the deposition." In determining whether the cost of a deposition was limited to transcription costs or whether it included a fee charged by an expert witness for his preparation and attendance, the Ohio Supreme Court held that it included the expert's fee for his preparation and attendance at the deposition. *Moore v. Gen. Motors Corp.* (1985), 18 Ohio St.3d 259, 18 OBR 314, 480 N.E.2d 1101. In *Moore*, the court stated:

"Pursuant to R.C. 4123.519 [now 4123.512], a common pleas court may tax to the employer the costs of an expert's witness fee [for] preparing and giving his

---

6. Neither party has argued that the amount of attorney fees, the statutory maximum of $2,500, was incorrect.

deposition as a 'cost of any legal proceedings authorized by this section.' " *Id.* at syllabus.

Plaintiffs attached an exhibit captioned "Cost of Legal Proceedings" to their motion for expenses in the court of common pleas. It included such items as filing fees, expert witnesses' fees, lay witnesses' fees, court reporter fees, postage, document fees, subpoena fees, and transcript fees totaling $24,427.56. The court of common pleas granted plaintiffs' motion in part by awarding them fees charged by expert witnesses. Specifically, the court of common pleas ordered:

"[T]he amount taxable against the Defendant[ ], for the expenses incurred by the Plaintiffs, is:

| | |
|---|---|
| Dr. E.R. McFadden | $ 1,440.90 |
| Dr. David Groth | 6,653.20 |
| Dr. Atul C. Mehta | 2,513.20 |
| Dr. David Rosenberg | 338.50 |
| | $10,945.60" |

The court of common pleas recognized that plaintiffs had set "forth their claimed expenses related to this case including costs of exhibits, blowups of charts, travel expenses, and witness fees for lay witnesses." It did not, however, find that those expenses qualified as costs. Relying on the syllabus of *Moore,* the court stated that "the following witnesses were 'experts' pursuant to *Moore* * * *: Dr. E.R. McFadden, Dr. David Groth, Dr. Atul C. Mehta, and Dr. David Rosenberg." It then reviewed the invoices submitted by plaintiffs and determined which parts of each physician's fee could be taxed as costs.

 The court of common pleas did not err in determining that an expert witness's fees and associated deposition expenses could constitute costs. It did, however, err in determining that those fees and expenses constituted costs when the expert witness appeared at trial. The statute expressly authorizes payment of costs of depositions filed in lieu of testimony at trial. It is silent, however, regarding depositions of expert witnesses who appear at trial. *Champa v. Top Services, Inc.* (Mar. 30, 1989), Cuyahoga App. No. 55229, unreported, 1989 WL 30544.

R.C. 4123.512(D) mirrors Civ.R. 32. Both allow a physician's deposition to be filed and used at trial in place of the physician's in-court testimony. The statute contains additional language that allows an employee to be reimbursed for the "cost of the deposition filed in court." This payment scheme helps to minimize an employee's expense in litigating a workers' compensation claim by encouraging "medical testimony via deposition, rather than through in-court testimony." *Akers v. Serv–A–Portion, Inc.* (1987), 31 Ohio St.3d 78, 80, 31 OBR 190, 192, 508 N.E.2d 964, 966; *Clark v. Bur. of Workers' Comp.* (1993), 88 Ohio App.3d 153,

157, 623 N.E.2d 640, 642. The purpose of the statute is not served by permitting a plaintiff who chooses to call the doctor to the stand rather than submitting the deposition at trial to recover costs of the in-court testimony. Therefore, costs of a deposition may be awarded only when the physician does not also appear at trial.

In this case, the deposition of only one physician, Dr. Groth, was filed in lieu of his appearance at trial. Accordingly, he is the only witness whose deposition costs should have been taxed to defendant. Plaintiffs had requested $7,560.70 based upon invoices submitted to them in connection with Dr. Groth's services. Of that amount, the court of common pleas awarded $6,653.20 and stated that the remaining fees were not properly taxable. The $6,653.20 figure included the witness's review of records, pathology slides, depositions, and literature, preparation of a report, and his appearance at the deposition. It also included the court reporter's fee, as well as a fee for videotaping the deposition and playing it to the jury.

Defendant has argued to this court that only $2,610.70 should have been awarded to plaintiffs in connection with Dr. Groth's deposition, an amount which included his fee for attending the deposition, the court reporter's fee, the videotaping fee, and the fee to play the videotape for the jury. Because the court of common pleas was in the best position to determine what fees were necessary for preparing and attending the deposition, this court affirms the $6,653.20 granted to plaintiffs for Dr. Groth's deposition. Plaintiffs have also argued that, pursuant to Civ.R. 37(C), they were entitled to recover costs incurred in taking the deposition of an asbestos manufacturer's employee in Montreal, Canada. According to their motion in the court of common pleas, plaintiffs had asked defendant to admit the genuineness of the asbestos manufacturer's shipping records that indicated quantities of asbestos that were sold to defendant. They argued that they were required to take the deposition because defendant did not admit the genuineness of the documents. Inasmuch as the court of common pleas did not discuss Civ.R. 37(C) or the costs of the deposition in Canada in its order awarding costs, it implicitly overruled that part of plaintiffs' motion.

Plaintiffs did not attach a copy of a request for admission by which they asked defendant to admit the genuineness of shipping records to its motion in the court of common pleas and this court has been unable to locate such a request in the record. Because the court of common pleas could not properly evaluate what defendant had been asked to admit and how it responded, its decision was proper.

Defendant's assignment of error is sustained in part. The amount of costs properly recoverable by plaintiffs was $6,653.20. Plaintiffs' assignment of error is overruled.

### III

Defendant's first, second, third, and fourth assignments of error are overruled. Its fifth assignment of error is sustained in part. Plaintiffs' assignment of error is overruled. This matter is remanded to the court of common pleas for further proceedings consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

QUILLIN, J., concurs.

REECE, P.J., concurs in judgment only.

REECE, Presiding Judge, concurring.

I concur in judgment only because I do not wish to appear to approve the admission of the evidence discussed in Assignments of Error 1 and 2. It is only the failure of the appellee to articulate and support the errors that compels me to support the overruling of the assignments. I concur fully in the balance of the opinion.