[Cite as *Pollock v. Mooney*, 2014-Ohio-4435.]

STATE OF OHIO, MONROE COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| DONALD W. POLLOCK, ET AL., | ) | |
| | ) | |
| PLAINTIFFS-APPELLEES, | ) | |
| | ) | CASE NO. 13 MO 9 |
| V. | ) | |
| | ) | OPINION |
| W.C. MOONEY, ET AL., | ) | |
| | ) | |
| DEFENDANTS-APPELLANTS. | ) | |

CHARACTER OF PROCEEDINGS:    Civil Appeal from Court of Common Pleas of Monroe County, Ohio Case No. 2012-223

JUDGMENT:    Affirmed in part
Reversed in part

APPEARANCES:
For Plaintiffs-Appellees    Attorney Craig E. Sweeney
Attorney Richard A. Yoss
122 N. Main Street
Woodsfield, Ohio 43793

For Defendants-Appellants    Attorney John Henry Marsh, Jr.
508 North St.
Caldwell, Ohio 43724

JUDGES:

Hon. Gene Donofrio
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated: September 30, 2014

DONOFRIO, J.

{¶1} Defendant-appellant, John Mooney, appeals from a Monroe County Common Pleas Court judgment granting summary judgment in favor of plaintiffs-appellees, Donald and Susan Pollock, on appellees' complaint for a declaratory judgment extinguishing appellant's oil and gas royalty interest in certain property.

{¶2} Appellees are the owners of certain property located in Malaga Township in Monroe County. They acquired the property in July 1992.

{¶3} Appellees' predecessors in title severed a gas royalty interest. In the Sale of Royalty, recorded April 5, 1902, John R. Mann and Elizabeth A. Mann conveyed "the one half part of his royalty of all the oil and gas" to W.C. Mooney.

{¶4} On July 23, 2012, appellees filed a complaint against the heirs and next of kin of W.C. Mooney, Elizabeth Mooney, Marie Shaffer, Elizabeth Srodes, John Mooney, Herbert Mooney, William Mooney, Mary Elizabeth Haviland, Martha Block, George Mooney, and John Davenport Mooney. The complaint requested a declaratory judgment that the defendants' oil and gas interest was extinguished under Ohio's Marketable Title Act (MTA), that the extinguished interest was vested in appellees, and that appellees are the fee simple owners of both the surface estate and the oil and gas leasing rights and royalty rights. Notice was served by publication. Appellant was the only defendant to enter an answer.

{¶5} Appellees next filed a motion for summary judgment alleging that the MTA extinguished appellant's interest because the interest existed prior to the root of title, a March 30, 1951 deed from W.W. Thornberry to Wilfred R. Thornberry and Edith E. Thornberry, and did not meet any of the exceptions set out in the statute. Appellant filed a response in opposition alleging that his royalty interest is personal property and, therefore, is not subject to the MTA. He also alleged even if appellees' root of title was accurate, it would still fail to extinguish his royalty interest because the interest has been the subject of a title transaction on at least three occasions.

{¶6} The trial court found that appellees' Root of Title deed was recorded on March 31, 1951. The court went on to find that appellees' Root of Title deed contains no reference to the Sale of Royalty and no deeds subsequent to the Root of Title

deed repeat or refer to the conveyance of oil and gas royalty in the Sale of Royalty or any other prior oil and gas reservations. The court further found that the oil and gas royalty interest was not preserved or recorded pursuant to R.C. 5301.51 or R.C. 5301.52. And the court found that none of the other exceptions set out in the statute applied. Finally, the court rejected appellant's argument that his royalty interest is personal property instead of realty.

{¶7} Appellant filed a timely notice of appeal on June 10, 2013.

{¶8} Appellant raises two assignments of error, the first of which states:

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN EXTINGUISHING A PERSONAL PROPERTY RIGHT BY APPLYING OHIO'S MARKETABLE TITLE ACT TO A NONPARTICIPATING ROYALTY INTEREST AND GRANTING PLAINTIFF/APPELLEES' MOTION FOR SUMMARY JUDGMENT.

{¶9} In reviewing a trial court's decision on a summary judgment motion, appellate courts apply a de novo standard of review. *Cole v. Am. Industries & Resources Corp.*, 128 Ohio App.3d 546, 552, 715 N.E.2d 1179 (7th Dist.1998). Thus, we shall apply the same test as the trial court in determining whether summary judgment was proper. Civ.R. 56(C) provides that the trial court shall render summary judgment if no genuine issue of material fact exists and when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. *State ex rel. Parsons v. Flemming*, 68 Ohio St.3d 509, 511, 628 N.E.2d 1377 (1994). A "material fact" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

{¶10} Appellant argues that pursuant to the Ohio Supreme Court, a royalty interest is personal property, not realty. Citing, *Pure Oil Co. v. Kindall*, 116 Ohio St.

188, 156 N.E. 119 (1927). Therefore, he contends, it is not subject to the MTA. Appellant asserts that the holder of a royalty interest cannot prevent or encumber the sale of the mineral estate or of the surface estate. He further states that a royalty interest holder must wait for the mineral estate holder to lease or develop the oil and gas before ever getting a return on his investment. Therefore, he contends a royalty interest is personal property and not subject to the MTA.

{¶11} Alternatively, appellant argues, if this court finds the MTA applies, then his interest is preserved by the exception found in R.C. 5301.49(D), which provides that a marketable title is subject to an "interest arising out of a title transaction which has been recorded subsequent to the effective date of the root of title from which the unbroken chain of title or record is started." Appellant asserts he acquired his royalty interest from a devise through the probate court. This devise, appellant asserts, means the royalty interest was the subject of a title transaction within the 40-year period from appellees' root of title. He asserts that how W.C. Mooney's one-half royalty interest passed through devises to his lineal descendants is an issue of material fact making summary judgment improper.

{¶12} Ohio's Marketable Title Act is found in R.C. 5301.47-5301.56. It acts as a 40-year statute of limitations for bringing claims against a title of record. *Collins v. Moran*, 7th Dist. No. 02 CA 218, 2004-Ohio-1381, ¶20. The MTA is meant to "simplify and facilitate land title transactions by allowing persons to rely on a record chain of title[.]" *Semachko v. Hopko*, 35 Ohio App.2d 205, 301 N.E.2d 560 (8th Dist.1973), paragraph one of the syllabus.

{¶13} The MTA extinguishes any interest existing prior to the root of title unless the interest is:

(a) specifically stated or identified in the root of title;

(b) specifically stated or identified in one of the muniments of the chain of record title within forty years after the root of title;

(c) recorded pursuant to R.C. 5301.51 and 5301.52;

(d) one of the other exceptions provided for in R.C. 5301.49;

(e) one of the rights that cannot be barred by the Marketable Title Act provided for in R.C. 5301.53.

*Id.* at paragraph two of the syllabus.

**{¶14}** "Marketable record title" is "a title of record * * * which operates to extinguish such interests and claims, existing prior to the effective date of the root of title * * *." R.C. 5301.47(A). "Root of title" is "that conveyance or other title transaction in the chain of title of a person, purporting to create the interest claimed by such person, upon which he relies as a basis for the marketability of his title, and which was the most recent to be recorded as of a date forty years prior to the time when marketability is being determined." R.C. 5301.47(E). The "root of title" is effective on the date on which it is recorded. R.C. 5301.47(E).

**{¶15}** Appellant argues his royalty interest is personal property as opposed to realty. He is correct.

**{¶16}** This issue was discussed by this court in *Traicoff v. Christman*, 7th Dist. No. 549, 1982 WL 6131 (May 13, 1982). In *Traicoff*, the appellant argued that a royalty interest was not an "estate in lands, tenements, or hereditaments'" but instead was personal property and not subject to statutory partition. This court noted that the tendency of many jurisdictions was to treat unaccrued royalty interests (oil and gas still in the ground) as realty and to treat royalty (oil and gas severed from the ground) as personal property. *Id.*, citing 131 A.L.R. 1371. Nonetheless, this court went on to find that based on *Pure Oil Co.*, 116 Ohio St. 188, Ohio has held that unaccrued oil and gas royalties are personal property. We reaffirmed this holding in *Buegel v. Amos*, 7th Dist. No. 577, 1984 WL 7725, *1 (June 5, 1984). Based on these cases, appellant's royalty interest is personal property.

**{¶17}** But even though the royalty interest is personalty, it is nonetheless subject to the MTA.

**{¶18}** In *Christman v. Wells*, 7th Dist. No. 539, 1981 WL 4773 (Aug. 28, 1981), a 1925 deed conveying property to the Garretts included a royalty interest reservation. The plaintiffs later acquired the property in question. The plaintiffs

argued the royalty reservation to the Garretts was created prior to their root of title and no notice establishing the interest had been filed. Therefore, the plaintiffs contended the MTA extinguished the royalty interest as a matter of law. The trial court dismissed the complaint.

**{¶19}** On appeal, this court noted that "the Marketable Title Act extinguishes interests and claims against realty created prior to the root of title where certain statutory requirements have not been met." *Id.* at *1. We observed that the outcome of the case was dependent upon the definition of "root of title" as applied to the facts of the case. *Id.* We then quoted the MTA's definition of "root of title." *Id.* We found that the interest claimed by the plaintiffs was a fee simple interest and the last recorded deed conveying a fee simple interest was recorded on April 10, 1923. *Id.* Because the deed containing the reservation of the royalty interest was recorded in 1925, it was created after the root of title. We then quoted the MTA's definition of "marketable record title" and concluded that the MTA applied only to interests and claims existing prior to the root of title. *Id.* Therefore, we affirmed the trial court's dismissal finding the reservation of royalties was not created prior to the "root of title."

**{¶20}** What is important to take away from *Christman* is that this court was willing to apply the MTA's provisions to a royalty interest. The only reason we did not do so in that case was because the royalty interest was created after the root of title. But our opinion was clear that if the royalty interest had been created prior to the root of title, we would have applied the MTA's provisions to the royalty interest.

**{¶21}** In addition to this court's treatment of a royalty interest in *Christman*, the MTA by its terms applies to royalty interests. Subject to the statutory exceptions,

> record marketable title shall be held by its owner and shall be taken by any person dealing with the land free and clear of *all interests, claims, or charges whatsoever*, the existence of which depends upon any act, transaction, event, or omission that occurred prior to the effective date of the root of title. *All such interests*, claims, or charges, *however denominated*, whether legal or equitable, present or future, whether

such interests, claims, or charges are asserted by a person sui juris or under a disability, whether such person is within or without the state, whether such person is natural or corporate, or is private or governmental, are hereby declared to be null and void.

(Emphasis added.); R.C. 5301.50. The MTA does not differentiate between different types of interests. It applies to *all* interests. Thus, the MTA is applicable in this case.

{¶22} Next we must apply the MTA to the facts of this case.

{¶23} The parties agree that the Root of Title is the deed from W.W. Thornberry to Wilfred R. Thornberry and Edith E. Thornberry, dated March 30, 1951 and recorded March 31, 1951. The parties also agree that royalty interest appellant claims to own stems from the Sale of Royalty deed from John R. Mann and Elizabeth A. Mann to W.C. Mooney, recorded on April 5, 1902.

{¶24} Unless an exception set out in R.C. 5301.49 applies here, appellant's interest is null and void pursuant to R.C. 5301.50. Appellant claims the exception set out in R.C. 5301.49(D) applies in this case. Pursuant to R.C. 5301.49(D), record marketable title is subject to:

Any interest *arising out of a title transaction which has been recorded* subsequent to the effective date of the root of title from which the unbroken chain of title or record is started; provided that such recording shall not revive or give validity to any interest which has been extinguished prior to the time of the recording by the operation of section 5301.50 of the Revised Code[.]

(Emphasis added.)

{¶25} Appellant contends that his interest was acquired through a devise in probate court, which he asserts means that the interest was the subject of a title transaction within the 40-year period of appellees' Root of Title. He contends that how W.C. Mooney's one-half royalty interest passed through devises in probate court

to his lineal descendants is an issue of material fact that remains to be litigated, making summary judgment improper.

{¶26} An interest passing through probate court does qualify as a title transaction that has been recorded. Pursuant to R.C. 5301.47(B), "records" include "probate and other official public records, as well as records in the office of the recorder of the county in which all or part of the land is situate[d]." And "'[r]ecording,' when applied to the official public records of the probate or other court, includes filing." R.C. 5301.47(C). These definitions apply to Revised Code sections 5301.47 through 5301.56. R.C. 5301.47. Thus, filing a probate court judgment would satisfy the recording element of R.C. 5301.49(D).

{¶27} The only problem with appellant's argument is that he did not present any evidence to support his claim. Appellant contends that the interest passed "through devises as a lineal descendent [sic.] via probate courts on at least three occasions since 1968." (Answer to Plaintiff's Motion for Summary Judgment). Appellant simply makes this assertion. He did not offer any evidence in support such as an affidavit or a judgment entry from a probate court evidencing the transfer of the royalty interest. Appellant cannot create a genuine issue of material fact based on bare allegations.

{¶28} Civ.R. 56(E) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party.

{¶29} Appellant failed to put forth an affidavit or other evidence supporting his claim that the royalty interest passed at least three times through probate court. For

this reason, no genuine issue of material fact existed. Therefore, summary judgment in appellees' favor was proper.

**{¶30}** Accordingly, appellant's first assignment of error is without merit.

**{¶31}** Appellant's second assignment of error states:

ASSESSING THE COST IN FULL TO DEFENDANT/APPELLANT WITHOUT CITING ANY AUTHORITY OR STATUTE IS AN ABUSE OF DISCRETION.

**{¶32}** Here appellant points out that appellees filed a declaratory judgment action to quiet title to their mineral interest and served 11 defendants by publication. If none of the defendants responded, appellant notes, appellees would have incurred the cost of the action. Appellant argues that because he saw the notice and sought to preserve his interest and because he was unsuccessful, the court ordered him to pay the cost appellees incurred to quiet title to their mineral estate. In other words, appellant argues, he has been penalized for defending his interest. He also states that the trial court included a publication fee of $1,692.78, without explaining how a publication fee can be considered a "cost," in the "costs" he was required to pay. Appellant alleges that the trial court abused its discretion in assessing the costs against him.

**{¶33}** We review a trial court's assessment of costs for abuse of discretion. *Woodell v. Ormet Primary Aluminum Corp.*, 156 Ohio App.3d 602, 2004-Ohio-1558, 808 N.E.2d 402. Abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's decision was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶34}** Pursuant to Civ.R. 54(D), "costs shall be allowed to the prevailing party unless the court otherwise directs." Generally, "costs" are defined as "the statutory fees to which officers, witnesses, jurors and others are entitled for their services in an action and which the statutes authorize to be taxed and included in the judgment."

*Benda v. Fana*, 10 Ohio St.2d 259, 227 N.E.2d 197 (1967), paragraph one of the syllabus. Litigation expenses are not considered "costs" unless a statute expressly permits a trial court to charge them as costs. *Cunningham v. Goodyear Tire & Rubber Co.*, 104 Ohio App.3d 385, 395, 662 N.E.2d 73 (9th Dist.1995), citing *Centennial Ins. Co. v. Liberty Mut. Ins. Co.*, 69 Ohio St.2d 50, 51, 430 N.E.2d 925 (1982).

{¶35} R.C. 2335.19(A) provides in relevant part:

On the rendition of judgment in any cause in any court, the costs of the party recovering, together with the party's debt or damages, shall be carried into the party's judgment, and the costs of the party against whom that judgment is rendered shall be separately stated in the record or docket entry.

{¶36} There is no indication by the trial court that it specifically ordered appellant to pay appellees' publication fee of $1,692.78. The court's judgment entry simply states: "Costs assessed in full to Defendants. Judgment granted the Clerk of Courts to collect on her costs." There is a sworn copy of a receipt of a "printer's fee" of $1,692.78 from the Monroe County Beacon included in the record but the trial court does not make any specific mention of it.

{¶37} In this case, appellees served 11 defendants by publication at a total cost of $1,692.78. Appellant was one of the 11 defendants and the only one of the defendants who appeared to defend his potential interest. Therefore, at most appellant is only responsible for one-eleventh of the publication fee, or $153.89.

{¶38} Accordingly, appellant's second assignment of error has merit. For the reasons stated above, the trial court's judgment granting summary judgment is hereby affirmed. The court's award of costs is reversed. The matter is remanded to the trial court where it shall determine which costs appellant is responsible for. If it determines that appellant is responsible for a portion of the publication fee, that portion shall not exceed one-eleventh of the total publication fee.

Waite, J., concurs.

DeGenaro, P.J., concurs.