[Cite as *Covert v. Koontz*, 2015-Ohio-228.]

STATE OF OHIO, MONROE COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| IRIS G. COVERT, | ) | |
| | ) | CASE NO. 13 MO 8 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| W.T. KOONTZ, et al., | ) | |
| | ) | |
| DEFENDANTS-APPELLANTS. | ) | |

CHARACTER OF PROCEEDINGS:      Civil Appeal from Common Pleas
                              Court, Case No. 2012-223.

JUDGMENT:                     Affirmed in Part; Reversed in Part;
                              and Remanded.

APPEARANCES:
For Plaintiff-Appellee:        Attorney Craig E. Sweeney
                              Attorney Richard A. Yoss
                              Yoss Law Office
                              122 N. Main Street
                              Woodsfield, OH  43793

For Defendants-Appellants:     Attorney John Henry Marsh, Jr.
                              Marsh Law Office
                              508 North Street
                              Caldwell, OH  43724

JUDGES:
Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Cheryl L. Waite

                              Dated:  January 20, 2015

DeGENARO, P.J.

{¶1} Defendants-Appellants, the heirs of W.C. Mooney, timely appeal from a Monroe County Common Pleas Court judgment granting summary judgment in favor of Plaintiff-Appellee, Iris G. Covert, on Covert's complaint for a declaratory judgment extinguishing Appellants' oil and gas royalty interest in certain property. Based upon this court's recent decision in *Pollock v. Mooney*, 7th Dist. No. 13 MO 9, 2014-Ohio-4435, and for the reasons outlined below, the trial court's judgment is affirmed in part, reversed in part and this matter is remanded for further proceedings.

**Facts and Procedural History**

{¶2} The facts of this case are undisputed. Covert is the owner of certain property located in Adams Township in Monroe County. She acquired the property in October 2006. Covert's predecessors-in-title severed a gas royalty interest.

{¶3} The chain of title shows that Thomas and Sarah R. Dougherty first partially severed the royalty interest, conveying "the one half part of his royalty in all the oil and gas" to W.C. Mooney, W.T. Koontz, and F.L Mooney via a Sale of Royalty recorded October 7, 1903. In 1922, the Dougherty's conveyed their surface fee interest in the property to Nelson Thomas; the deed included the following reservation: "Excepting and reserving from the above the three fourths of the Royalty in oil and gas for fifteen years from this date, thereafter reserving <u>the</u> one-half royalty in oil & gas….be the same more or less, but subject to all legal highways." (Emphasis and ellipses sic.) In November 1925 Nelson and Rachel Thomas conveyed their surface fee interest to Floyd Faires with a deed repeating the reservation in the 1922 deed: "Excepting [sic] reserving from the above the three fourths of the Royalty in Oil and Gas for 15 years from the 29" [sic] day of May 1922, thereafter reserving the one-half royalty in oil and gas[.]" Finally, the administrators of the estate of Floyd Faires conveyed the surface fee interest to Gilbert James Covert and Zola May Covert through a deed in August, 1958 containing the following language: "Further excepting and reserving to Nelson Thomas et al, one half royalty in oil and gas."

{¶4} On July 23, 2012, Covert filed a complaint against W.T. Koontz, F.L. Mooney, W.C. Mooney, Thomas Dougherty, and S.R. Dougherty, along with their

unknown successors in interest. The complaint requested a judgment declaring that the defendants' oil and gas interest was extinguished under Ohio's Marketable Title Act, that the extinguished interest was vested in Covert, and that Covert is the fee simple owner of both the surface estate and the oil and gas leasing rights and royalty rights. Notice was served by publication. Appellants, the heirs of W.C. Mooney, listed on the answer as "John D. Mooney III and Audrey Joan Mooney" were the only defendants to file an answer. They claimed title to their share of the one-half royalty interest as conveyed in the 1903 Sale of Royalty. The trial court granted Covert's motion for default judgment as to the remaining defendants.

{¶5} Covert filed a motion for summary judgment, which first alleged that the oil and gas reservation by Nelson and Rachel Thomas in the 1925 Deed was of no legal effect because all royalty rights had been reserved or conveyed in deeds prior to that one. Moreover, Covert alleged that the OMTA extinguished Appellants' interest because: 1) the interest is not specifically stated or identified in the root of title, the August 2, 1958 deed from the administrators of the estate of Floyd Faires to Gilbert James Covert and Zola May Covert; 2) the interest is not specifically stated or identified in any of the muniments in the chain of record title within the 40 years after the Root of Title deed; and 3) none of the statutory exceptions apply.

{¶6} Appellants filed a brief in opposition to summary judgment, conceding that the attempted reservation by the Nelsons in the 1925 Deed is not effective, but arguing that their royalty interest is personal property and therefore not subject to the OMTA. Alternatively, they argued that the "et al" in the language of the 1958 Root of Title Deed ("further excepting and reserving to Nelson Thomas *et al*, one half royalty in oil and gas") (emphasis added), refers to the W.C. Mooney heirs.

{¶7} Covert filed a reply, asserting that the "et al" actually refers to Rachel Thomas, wife of Nelson Thomas, and that even assuming it did refer to the W.C. Mooney heirs, that recitation language is not specific enough to avoid extinguishment under the OMTA. In fact, Covert argued, the Root of Title Deed contains no reference to the 1903 Sale of Royalty. Finally, Covert argued that a royalty interest remains an interest in realty

until the minerals are removed from the ground and materialized as personal property, and that the royalty interest is therefore subject to the OMTA.

**{¶8}** In a May 21, 2013 judgment entry, trial court found that the purported oil and gas reservation by Nelson and Rachel Thomas was of no legal effect because all royalty rights had been reserved or conveyed prior to the 1925 Deed. More specifically, it found that the 1903 Sale of Royalty vested one-half of the oil and gas royalty to W. T. Koontz, F. L. Mooney and W. C. Mooney, and the remaining one-half royalty interest had been reserved in the 1922 Deed. The trial court also found that the "et al" in the Root of Title Deed refers to Rachel Thomas, not the W.C. Mooney heirs.

**{¶9}** The trial court ruled that a royalty interest is a realty interest subject to the OMTA; the severed oil and gas interest in the Sale of Royalty is not specifically stated or identified in either the Root of Title Deed or in any of the muniments in the chain of title within the 40 year period immediately after the Root of Title Deed; and that therefore no savings conditions have been met to preserve the interest of Appellants. Accordingly, the trial court granted summary judgment in favor of Covert and assessed costs in full against Appellants.

### Marketable Title Act

**{¶10}** In their first assignment of error, Appellants assert:

"The trial court committed reversible error in extinguishing a personal property right by applying Ohio's Marketable Title Act to a nonparticipating royalty interest and granting Plaintiff/Appellees [sic] motion for summary judgment."

**{¶11}** When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court and, therefore, engages in de novo review. *Parenti v. Goodyear Tire & Rubber Co.*, 66 Ohio App.3d 826, 829, 586 N.E.2d 1121 (9th Dist.1990). Under Civ.R. 56, summary judgment is only proper when the movant demonstrates that, viewing the evidence most strongly in favor of the nonmovant, reasonable minds must conclude no genuine issue as to any material fact

remains to be litigated and the moving party is entitled to judgment as a matter of law. *Doe v. Shaffer*, 90 Ohio St.3d 388, 390, 738 N.E.2d 1243 (2000). Further, "[t]he construction of written contracts and instruments of conveyance is a matter of law." *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), paragraph one of the syllabus, quoting *Graham v. Drydock Coal Co.*, 76 Ohio St.3d 311, 313, 667 N.E.2d 949 (1996). Thus, a de novo review applies as well.

{¶12} Appellants make two main arguments in this assignment of error. First, they assert that a royalty interest is personal property that is not subject to the OMTA. Alternatively, assuming the OMTA applies, they claim their interest is preserved by the exception found in R.C. 5301.49(D), which provides that a marketable title is subject to an "interest arising out of a title transaction which has been recorded subsequent to the effective date of the root of title from which the unbroken chain of title or record is started." Appellants contend they acquired the royalty interest from a devise through the probate court and therefore the royalty interest was the subject of a title transaction within the 40–year period after Covert's root of title. They finally contend that how W.C. Mooney's one-half royalty interest passed through devises to his lineal descendants is an issue of material fact making summary judgment improper.

{¶13} These arguments have been resolved by this panel's recent opinion in *Pollock*, *supra*, in which overlapping parties litigated identical issues before the same trial court.

{¶14} Specifically, in *Pollock,* appellees acquired the surface fee interest in 1992, after their predecessors-in-title had severed a gas royalty interest in 1902, conveying "the one half part of his royalty of all the oil and gas" to W.C. Mooney. Appellees filed a similar complaint alleging that pursuant to the OMTA they were owners of both the surface fee interest and the oil and gas leasing and royalty rights pursuant to the OMTA. John D. Mooney III, as a W.C. Mooney heir—one of the Appellants here—was the only defendant to enter an answer in the *Pollock* case. The trial court granted appellee's motion for summary judgment and Mooney appealed.

{¶15} On appeal in *Pollock*, Mooney made similar arguments as herein, which this panel rejected. Affirming the trial court, this panel first concluded that although "a royalty interest is personalty, it is nonetheless subject to the MTA." *Pollock* at ¶17. With regard to the alternative argument that the severed royalty interest had been preserved as contemplated by the OMTA, we held in *Pollock*:

> Appellant contends that his interest was acquired through a devise in probate court, which he asserts means that the interest was the subject of a title transaction within the 40–year period of appellees' Root of Title. He contends that how W.C. Mooney's one-half royalty interest passed through devises in probate court to his lineal descendants is an issue of material fact that remains to be litigated, making summary judgment improper.
>
> An interest passing through probate court does qualify as a title transaction that has been recorded. Pursuant to R.C. 5301.47(B), "records" include "probate and other official public records, as well as records in the office of the recorder of the county in which all or part of the land is situate[d]." And " '[r]ecording,' when applied to the official public records of the probate or other court, includes filing." R.C. 5301.47(C). These definitions apply to Revised Code sections 5301.47 through 5301.56. R.C. 5301.47. Thus, filing a probate court judgment would satisfy the recording element of R.C. 5301.49(D).
>
> The only problem with appellant's argument is that he did not present any evidence to support his claim. Appellant contends that the interest passed "through devises as a lineal descendent [sic.] via probate courts on at least three occasions since 1968." (Answer to Plaintiff's Motion for Summary Judgment). Appellant simply makes this assertion. He did not offer any evidence in support such as an affidavit or a judgment entry from a probate court evidencing the transfer of the royalty interest. Appellant cannot create a genuine issue of material fact based on bare allegations.

*Pollock* at ¶25-27.

**{¶16}** Here, Appellants failed to even raise this as an issue in their brief in opposition to summary judgment, let alone support it with any evidence. This argument has therefore been waived on appeal. *See, e.g.*, *Price v. K.A. Brown Oil & Gas, L.L.C.*, 7th Dist. No. 13 MO 13, 2014-Ohio-2298, ¶17 ("These issues were not raised to the trial court in summary judgment, and we need not consider them on appeal.") Accordingly, based upon *Pollock*, Appellants' first assignment of error is meritless.

### Costs

**{¶17}** In their second assignment of error, Appellants assert:

"Assessing the cost in full to Defendant/Appellant without citing any authority or statute is an abuse of discretion."

**{¶18}** A trial court's assessment of costs is reviewed for an abuse of discretion. *Woodell v. Ormet Primary Aluminum Corp.*, 156 Ohio App.3d 602, 2004–Ohio–1558, 808 N.E.2d 402. "An abuse of discretion means an error in judgment involving a decision that is unreasonable based upon the record; that the appellate court merely may have reached a different result is not enough." *Downie v. Montgomery*, 7th Dist. No. 12 CO 43, 2013-Ohio-5552, ¶50.

**{¶19}** Appellants argue that the trial court abused its discretion by ordering them to pay publication fees where there is no authority providing for the assessment of such as a cost. As an initial matter, there are several factual inaccuracies in Appellants' brief. Namely, they claim that "Plaintiffs/Appellees did not know or did not have any addresses for the lineal [descendants] of the named defendants; therefore, Plaintiffs served eleven defendants by publication." They go on to claim that the trial court ordered them to pay a publication fee in the amount of $1,692.78 "without explaining how a publication fee can be taxed as cost or citing a single statute authorizing this type of assessment as cost." However, Covert only served five defendants by publication, the cost of which was $1,151.64, an amount that was assessed to Appellants as a cost by the trial court.

**{¶20}** In any event, Appellants argue that it is unfair for them to incur these publication costs; they note that had none of the defendants responded, Covert would have incurred the cost of the action. Instead, Appellants were saddled with these costs, which they believe constitutes an unjust penalty for defending their interests.

**{¶21}** Again this issue is resolved by the *Pollock* case where Mooney made an identical argument, which this court resolved in his favor:

> Pursuant to Civ.R. 54(D), "costs shall be allowed to the prevailing party unless the court otherwise directs." Generally, "costs" are defined as "the statutory fees to which officers, witnesses, jurors and others are entitled for their services in an action and which the statutes authorize to be taxed and included in the judgment." *Benda v. Fana*, 10 Ohio St.2d 259, 227 N.E.2d 197 (1967), paragraph one of the syllabus. Litigation expenses are not considered "costs" unless a statute expressly permits a trial court to charge them as costs. *Cunningham v. Goodyear Tire & Rubber Co.*, 104 Ohio App.3d 385, 395, 662 N.E.2d 73 (9th Dist.1995), citing *Centennial Ins. Co. v. Liberty Mut. Ins. Co.*, 69 Ohio St.2d 50, 51, 430 N.E.2d 925 (1982).
>
> R.C. 2335.19(A) provides in relevant part:
>
> On the rendition of judgment in any cause in any court, the costs of the party recovering, together with the party's debt or damages, shall be carried into the party's judgment, and the costs of the party against whom that judgment is rendered shall be separately stated in the record or docket entry.
>
> * * *
>
> In this case, appellees served 11 defendants by publication at a total cost of $1,692.78. Appellant was one of the 11 defendants and the only one of the defendants who appeared to defend his potential interest. Therefore, at most appellant is only responsible for one-eleventh of the publication fee, or $153.89.

*Pollock* at ¶34-35, 37.

**{¶22}** Accordingly, we reversed the order of costs and remanded to the trial court for further proceedings with respect to the assessment of costs. *Id.* at ¶38.

**{¶23}** Here, the trial court imposed upon Appellants the full cost of serving all five defendants: $1,151.64. At most, Appellants, the heirs of one of the five defendants, should have been responsible for one-fifth of the publication fee, or $230.33. Thus, Appellants' second assignment of error is meritorious.

### Conclusion

**{¶24}** For the reasons stated above, the trial court's grant of summary judgment is affirmed. The trial court's award of costs is reversed and this matter is remanded to the trial court where it shall impose, at maximum, one-fifth of the publication fee, as costs upon Appellants.

Donofrio, J., concurs.

Waite, J., concurs in judgment only.